**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00842-RBJ-NYW

KELVIN ANDRE SPOTTS,

      Plaintiff,

v.

C. CARTER, Acting Warden,
RARDIN, Assistant Warden,
LOVETT, Warden, and
UNKNOWN, Facility Supervisor,

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

      This matter is before the court on Defendants C. Carter, Rardin, and Lovett's (collectively, "Defendants") Motion for Summary Judgment (or "Motion"), [Doc. 42, filed October 22, 201]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(b), the Order of Reference dated August 5, 2021, [Doc. 25], and the Memorandum dated October 27, 2021, [Doc. 45]. For the reasons explained herein, I recommend that the Motion for Summary Judgment be **GRANTED**.

**BACKGROUND**

**I.**     **Factual Background – Plaintiff's Complaint**

      Plaintiff Kelvin Andre Spotts ("Mr. Spotts" or "Plaintiff") initiated this action pro se on March 22, 2021. *See* [Doc. 1]. At the time of filing, Mr. Spotts was in the custody of the Federal Bureau of Prisons ("BOP") and incarcerated at the United States Penitentiary ("USP") in Florence, Colorado ("USP Florence"), *see* [*id.*], but has since been transferred to the Federal Correctional

Institution in Memphis, Tennessee, *see* [Doc. 11].

In his Complaint, Mr. Spotts asserts a single Eighth Amendment conditions-of-confinement claim against Defendants premised on "extremely cold" conditions at USP Florence between November 1, 2020 and February 25, 2021. [Doc. 1 at 4–5 (complaining of extremely cold air at the Florence prison facility and alleging that he contracted COVID-19 after requiring hospitalization for pneumonia caused by cold conditions at the prison)]. Mr. Spotts alleges that he personally asked each Defendant to turn on the heat to no avail. [*Id.* at 4]. Nor did Defendants provide Mr. Spotts thermal clothing or extra blankets. [*Id.*]. As a result of the cold temperatures, Mr. Spotts contracted pneumonia and developed a pulmonary blood clot. [*Id.*]. On February 25, 2021, Mr. Spotts was taken to an outside hospital for treatment; and, upon his return, he tested positive for COVID-19. [*Id.* at 4–5]. He alleges that, but for the "extremely cold" temperatures, he would not have contracted pneumonia or COVID-19. [*Id.*]. Mr. Spotts seeks money damages "for future medical needs, medical treatment, [and] psychological treatment." [*Id.* at 7].

As to his administrative remedies, in the Complaint Mr. Spotts indicates that he did not exhaust his administrative remedies because he was "Impeded By Staff." [*Id.* at 5]. Specifically, he asserts that "Ms. Dubose and Ms. Baca told me that I could not file because my incident happened on 1/25/21, and 20 days has passed so I could [sic] file, and they refused to give me a BP 8 9 + 10 as requested". [*Id.* (capitalizations omitted)].

## II.   Procedural Background

Mr. Spotts filed the Complaint on March 22, 2021, *see* [Doc. 1], and this action was assigned to the Honorable Gordon P. Gallagher, *see* [Doc. 2]. The next day, Judge Gallagher ordered Mr. Spotts to cure deficiencies in the Complaint as Plaintiff had failed to address the filing fee by paying it or by seeking leave of court to proceed pursuant to 28 U.S.C. § 1915. *See* [Doc.

3].  On April 1, 2021, Mr. Spotts filed a Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915, [Doc. 4], which the court subsequently denied, *see* [Doc. 5].  On June 16, 2021, Mr. Spotts filed a "Request for Appointment of Counsel Due to Institutional Safety Concerns/Motion for Discovery Motion to Deny Summary Judgment", [Doc. 13], and a Motion for Temporary Injunction, [Doc. 14].  The court subsequently denied both motions.  *See* [Doc. 15; Doc. 16].

On July 8, 2021, Judge Gallagher issued an Order Drawing Case, [Doc. 17], and this case was drawn to the undersigned.  Upon the Parties' non-consent to the jurisdiction of a Magistrate Judge, *see* [Doc. 22], this action was reassigned to the Honorable R. Brooke Jackson, *see* [Doc. 24], who subsequently referred this matter to the undersigned, *see* [Doc. 25].

On August 3, 2021, Mr. Spotts filed a Prisoner Motion for Appointment of Counsel, [Doc. 23], which the court subsequently denied, *see* [Doc. 26].  On September 20, 2021, Mr. Spotts filed a "Motion for Summary Judgment in Compliance with D.C.COLO. LCivR.56.1 & Default Judgment for a Sum Certain in Compliance with D.C.COLO.LCivR.55.1" ("Plaintiff's Motion for Summary Judgment").  [Doc. 31].  Two days later, Judge Jackson denied Plaintiff's Motion for Summary Judgment.  *See* [Doc. 36].

Pursuant to Judge Jackson's Practice Standards, on October 8, 2021, Defendants filed a document titled "Letter of Intent to File a Motion for Summary Judgment" ("Letter of Intent"), [Doc. 40], wherein they explained their intention "to move for summary judgment because there is no genuine dispute that Plaintiff . . . did not exhaust his administrative remedies before filing the pending action."  [*Id.* at 1].

On October 20, 2021, Judge Jackson issued an Order on Defendants' Letter of Intent, stating that "[t]he Court has no objection to [D]efendants' filing their motion" for summary

judgment.  [Doc. 41].  On October 22, 2021, Defendants filed the instant Motion for Summary Judgment.  [Doc. 42].  The court held a status conference with the Parties on October 27, 2021, during which time the court set Plaintiff's deadline to respond to Defendants' Motion for Summary Judgment for December 3, 2021.  *See* [Doc. 44 at 2].

On November 1, 2021, Plaintiff filed a document titled "Motion Responding to Letter of Intent that was Served on 11/25/21 [sic], 17 Days After it was Filed" ("Response to Letter of Intent").  [Doc. 47].  At the time, the Response to Letter of Intent was reflected on the court's docket for the court's electronic filing system as a "Response to 42 Motion for Summary Judgment . . ."  *See* [Doc. 51 at 1].  On November 15, 2021, Mr. Spotts filed a "Motion to Correct Clerical Order in Docket Entry 47" ("Motion to Correct"), wherein he requested, *inter alia*, that the court correct "the clerical error" in the Response to Letter of Intent to properly reflect that Plaintiff was responding to Defendants' Letter of Intent, and not Defendants' Motion for Summary Judgment. *See* [Doc. 49].  The same day, Defendants filed their Reply in Support of Motion for Summary Judgment ("Reply").  [Doc. 48].[1]  On November 17, 2021, the court granted the Motion to Correct insofar as Plaintiff sought to amend the name of the Response to Letter of Intent in the court's docket to correctly reflect the document to which it was responding—i.e., Defendants' Letter of Intent.  *See* [Doc. 51 at 3].  The court also extended Mr. Spotts's deadline to respond to the Motion for Summary Judgment to January 3, 2022.  [*Id.*].

On January 18, 2022, Mr. Spotts filed his Response to the Motion for Summary Judgment.

---

[1] In their Reply, although Defendants "assume[d]" that Plaintiff's Response to Letter of Intent constituted Plaintiff's response to the Motion for Summary Judgment, they also acknowledged that that document "may be a response to Defendants' Letter of Intent to File the Motion, ECF No. 40, and the corresponding Minute Order by the Court, ECF No. 41."  [*Id.* at 2 n.2].

*See* [Doc. 54].[2]   The same day, Plaintiff also filed (1) "Plaintiff's Interrogatories and Request for Production of Documents", [Doc. 55]; (2) another copy of the Response to Letter of Intent, [Doc. 56]; and (3) a separate "Request for Production of Documents", [Doc. 57].  The court also granted Defendants leave to file a supplemental reply to their Motion for Summary Judgment to the extent they believed such reply was necessary.  *See* [Doc. 59].  On February 4, 2022, Defendants filed their Supplemental Reply in Support of Motion for Summary Judgment ("Supplemental Reply"). [Doc. 61].  The Motion for Summary Judgment is therefore ripe for determination.

## LEGAL STANDARDS

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted).  It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  At all times, the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."  *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

---

[2] The document Plaintiff filed is titled "Motion to Deny Summary Judgment", [Doc. 54], which the court construed as Plaintiff's Response in opposition to the instant Motion for Summary Judgment.  *See* [Doc. 59].

To satisfy his burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment). In considering the nonmovant's evidence, the court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). Further, the court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016). Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

In applying these legal principles, this court is mindful that Mr. Spotts proceeds pro se and is entitled to a liberal construction of his papers. *See Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019). But the court cannot and does not act as an advocate for a pro se party. *See United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019). Nor does a party's pro se status exempt him from complying with the procedural rules that govern all civil actions filed in this District, namely, the Federal Rules of Civil Procedure and the Local Rules of Practice for the District of Colorado. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

## UNDISPUTED MATERIAL FACTS

The court draws the following undisputed material facts from the record before it.[3]

1.     The allegations in the Complaint arise from events that occurred during Mr. Spotts's detention at the USP Florence.  *See* [Doc. 1; Doc. 42 at 2, ¶ 1].

2.     The BOP has a four-step Administrative Remedy Program for inmate grievances, which includes four levels, including three formal levels, and is codified at 28 C.F.R. § 542.10 *et seq*.  *See* [Doc. 42-1 at ¶¶ 3–4].

3.     An inmate has not exhausted his administrative remedies until he has properly and timely sought review at all three formal levels.  [*Id.* at ¶ 5].

4.     Since Mr. Spotts entered BOP custody, he has filed 147 administrative remedy requests or appeals of those remedies.  [*Id.* at ¶ 9]; *see also* [*id.* at 87].[4]

5.     None of Mr. Spotts's 147 administrative remedies are related to the allegations in the Complaint.  [*Id.* at ¶ 11].

6.     Between November 2020 through January 2021—the period when Mr. Spotts alleges he was subjected to cold temperatures in his housing unit—he filed one administrative remedy: an appeal to the regional office level, dated January 5, 2021.  [*Id.* at ¶ 12].  This appeal was related to the denial of access to a law library.  [*Id.*]; *see also* [*id.* at 86].

---

[3] Because Mr. Spotts does not point to evidence to rebut the Statement of Material Facts in Defendant's Motion for Summary Judgment, *see* [Doc. 54]; *see also* [Doc. 47], the court deems the properly supported facts offered by Defendants as true.  *See* Fed. R. Civ. P. 56(e)(2).  However, even where certain facts have been deemed as true, the court may not enter summary judgment unless the moving parties carry their burden under Rule 56 of the Federal Rules of Civil Procedure.  *See Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

[4] Defendants' Exhibit 1 includes the Declaration of Paula Trujillo, *see* [Doc. 42-1 at 2–6], and two attachments, *see* [*id.* at 7–87].  Ms. Trujillo's Declaration is organized by paragraph number, while the attachments are not.  Therefore, the court will refer to Ms. Trujillo's declaration by paragraph number (e.g., [Doc. 42-1 at ¶ ___]), and to the attachments by the page number generated by the CM/ECF system in the upper right-hand corner of each page (e.g., [Doc. 42-1 at ___]).

7.    W. O'Donnell ("Mr. O'Donnell" or "Assistant Warden O'Donnell") is an Associate Warden at the BOP facilities known as the Federal Correctional Complex ("FCC") in Florence, Colorado, which encompasses USP Florence.  *See* [Doc. 42-2 at ¶ 1].  Associate Warden O'Donnell has been employed in this capacity since November 2018, and has been employed by the BOP since 1995.  [*Id.*].

8.    Associate Warden O'Donnell is a member of the Executive Staff and serves as the Administrative Remedy Coordinator at USP Florence.  [*Id.* at ¶ 3].  He is responsible for ensuring all requests for administrative remedies filed by inmates at USP Florence, including those filed by Mr. Spotts, are processed.  [*Id.*].

9.    As a member of the Executive Staff, Associate Warden O'Donnell conducts rounds in every unit at USP Florence on a weekly basis.  [*Id.* at ¶ 4].  Members of the Executive Staff also make themselves available to inmates on a daily basis during the lunchtime meal.  [*Id.*].

10.    One of the purposes of these rounds and the Executive Staff making themselves available to inmates daily is to ensure the needs of all inmates are being met.  [*Id.*].  This availability gives inmates the opportunity to address any issues they are having directly with the members of the Executive Staff, including Associate Warden O'Donnell.  [*Id.*].

11.    At no time did Mr. Spotts advise Associate Warden O'Donnell that he (Mr. Spotts) had requested, but was unable to obtain, or was denied access to, Administrative Remedy Forms. [*Id.* at ¶ 6].

12.    T. DuBose ("Ms. Dubose" or "Unit Manager Dubose") was Plaintiff's Unit Manager at USP Florence from October 19, 2018, until his transfer to FCI Memphis on May 20, 2021.  *See* [Doc. 42-3 at ¶¶ 1, 3].

13.    Inmates in Unit Manager DuBose's unit are able to address any issues regarding

their confinement with her, including access to and/or the filing of grievances and administrative remedies.  [*Id.* at ¶ 4].

14.   Plaintiff did not request a grievance or Administrative Remedy Form from Unit Manager DuBose regarding the allegations in the Complaint.  [*Id.* at ¶ 5].

## ANALYSIS

Defendants seek summary judgment on the basis that Mr. Spotts has not exhausted his administrative remedies, and therefore his suit is barred.  *See* [Doc. 42 at 5–13].  I first discuss the statutes and regulations applicable to Mr. Spotts's claim, including the Prison Litigation Reform Act ("PLRA") and the BOP's Administrative Remedy Program, before considering whether Defendants have met their burden for purposes of summary judgment.

## I.   Statutory Framework for Exhaustion of Administrative Remedies

### A.   Prison Litigation Reform Act

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "Any prisoner who seeks to bring a claim involving 'general circumstances or particular episodes' of prison life must first exhaust the administrative remedies available to him in prison." *May v. Segovia*, 929 F.3d 1223, 1226–27 (10th Cir. 2019) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Jones v. Bock*, 549 U.S. 199, 211 (2007)).  "Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (internal citations omitted).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim [or any other

federal claim] under [the] PLRA for failure to exhaust his administrative remedies," and the "doctrine of substantial compliance does not apply." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (internal quotation marks omitted).

But the PLRA makes explicit that a prisoner must exhaust only *available* administrative remedies.   42 U.S.C. § 1997e(a).   An available remedy is one "capable of use for the accomplishment of a purpose."  *See Booth v. Churner*, 532 U.S. 731, 737 (2001).  Indeed, "courts . . . are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). If Defendants demonstrate that Mr. Spotts did not exhaust his administrative remedies, the burden shifts to Mr. Spotts "to show that remedies were unavailable to him."  *May*, 929 F.3d at 1234 (internal quotation marks omitted); *see also Williams v. Borrego*, No. 19-cv-00371-RBJ-MEH, 2020 WL 1502296, at *7 (D. Colo. Mar. 30, 2020) (noting that inmates face a "high bar to show unavailability") (citing *May*, 929 F.3d at 1235; *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

### B.     The BOP Administrative Remedy Program

The BOP has a four-step Administrative Remedy Program, codified at 28 C.F.R. § 542.10, *et seq.*, in which an inmate must file a different form—i.e., BP-8, BP-9, BP-10, and BP-11—at each successive step of the process.  *See* 28 C.F.R. §§ 542.10–542.19.

The first step requires informal resolution with prison staff, which the inmate requests with a Request for Information Resolution Form, also known as a BP-8 request.  *See* 28 C.F.R. § 542.13(a); [Doc. 42-1 at ¶ 3].   At the second step, the inmate must submit the formal Administrative Remedy Request, known as a BP-9 request, to the institution in which the inmate is incarcerated. 28 C.F.R. § 542.14(a); *see also* [Doc. 42-1 at ¶ 3].  The regulations allow the

prisoner twenty days from the date of the incident to complete the informal resolution and file a formal Administrative Remedy Request, if necessary.  *See* 28 C.F.R. § 542.14(a).

If dissatisfied with the warden's response at the second step, the prisoner may go to the third step, which is an appeal to the Regional Director, by filing a Regional Office Administrative Remedy Appeal, also known as a BP-10 request, within twenty days of the warden's dated response.  *See* 28 C.F.R. § 542.15(a).  Finally, at the fourth step, an inmate may file a Central Office Administrative Remedy Appeal, known as a BP-11 request, with the BOP's Office of General Counsel within thirty days of the Regional Office's denial.  *Id.*  At any level, an official's failure to respond within the time allotted constitutes a denial of the request or appeal.  28 C.F.R. § 542.18.

## II.    Application – Failure to Exhaust

Failure to exhaust administrative remedies is an affirmative defense.  As set forth above, Defendants bear the initial burden of establishing a prima facie case of Mr. Spotts's failure to exhaust.  If Defendants satisfy this requirement, the burden shifts to Mr. Spotts to excuse his failure to comply with the procedures set forth in 28 C.F.R. § 542.10, *et seq.*

Defendants argue that Mr. Spotts failed to exhaust his administrative remedies because he did not raise the issues in the Complaint relating to the cold temperatures at the facility in an administrative grievance or appeal.  *See* [Doc. 42 at 8–9].  I respectfully agree.

***Mr. Spotts Has Failed to Exhaust His Administrative Remedies***.  To satisfy the PLRA's exhaustion requirement, an inmate must "provide[ ] prison officials with enough information to investigate and address the inmate's complaint internally." *Barnes v. Allred*, 482 Fed. App'x 308, 311 (10th Cir. 2012) (quotation omitted).  To that end, "[a] prisoner's duty to exhaust administrative remedies, therefore, is fulfilled when prison officials are given adequate notice of

the nature of his complaint." *Saleh v. Wiley*, No. 09-cv-02563-PAB-KLM, 2012 WL 4356219, at *1 (D. Colo. Sept. 24, 2012). "[E]xhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

The failure to raise issues at the administrative level which are central to a plaintiff's claim precludes a finding that the plaintiff provided sufficient information to permit prison officials to investigate his complaints. *See Holmes v. Rudd*, No. 20-cv-00016-NYW, 2020 WL 7868466, at *9 (D. Colo. Dec. 31, 2020) (finding that the plaintiff failed to exhaust his administrative remedies because he failed to include the facts relied upon in his complaint in his grievances); *see also Sayed v. Page*, No. 16-cv-02712-WJM-NRN, 2020 WL 1130069, at *5 (D. Colo. Mar. 9, 2020) (finding failure to exhaust administrative procedures where inmate sought remedies in his lawsuit that he had not sought in his grievances); *Saleh*, 2012 WL 4356221, at *10 (finding a failure to exhaust administrative remedies where the inmate's grievance did not "mention the altercation" that was the basis of the lawsuit or "provide sufficient information to trigger an investigation of [the defendant's] conduct").

The undisputed material facts here reveal that Mr. Spotts, as a BOP inmate, is subject to the BOP's grievance procedures specified in 28 C.F.R. § 542.10, *et seq.*; that Mr. Spotts is aware of the BOP's required grievance procedures; and that Mr. Spotts did not exhaust his administrative remedies with respect to his sole Eighth Amendment Claim. Mr. Spotts's complaints of allegedly "extremely cold" conditions at the prison facility between November 1, 2020 and February 25, 2021 are subject to the grievance procedures set forth in 28 C.F.R. § 542.10, *et seq. See* [Doc. 1 at 4–5]. However, Mr. Spotts did not file any administrative grievance which raised any issues related to the temperatures at the prison facility during that time. [Doc. 42-1 at ¶¶ 10–12].

Specifically, after November 2020, Mr. Spotts filed one BP-10 appeal request at the regional office level, on January 5, 2021, relating to a prior BP-9 response that he received from the Warden regarding the denial of Plaintiff's access to the law library.  [*Id.* at ¶ 12]; *see also* [*id.* at 85–86]. Mr. Spotts filed his next Administrative Remedy form, a BP-9, on August 3, 2021, after he was transferred to his current detention facility, FCI Memphis. [*Id.* at ¶ 13].  In that form, he requested compassionate release.  [*Id.*].  As of October 19, 2021—two days before Defendants filed the instant Motion for Summary Judgment—Mr. Spotts had not filed any further Remedies or Appeals. [*Id.*].

Because Defendants have carried their burden of making a prima facie showing that Mr. Spotts failed to comply with the BOP's Administrative Remedy Program, the burden is on Mr. Spotts to provide admissible evidence that such grievance procedure was rendered unavailable to him.  *See Anderson*, 277 U.S. at 248 (explaining that the burden shifts to the nonmovant after the summary judgment movant makes a prima facie showing); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (stating that the nonmovant must go beyond the allegations and denials of her pleadings and provide admissible evidence).  As explained further below, I find that he fails to do so.

***Mr. Spotts Fails to Adduce Sufficient Evidence to Show that the Administrative Remedy Program was Unavailable to Him.***  For purposes of PLRA exhaustion, an administrative remedy is unavailable "when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation," *Tuckel*, 660 F.3d at 1252–53, or "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy," *Little*, 607 F.3d at 1250; *see also Ross v. Blake*, 578 U.S. 632 (2016).

In *Ross*, the United States Supreme Court outlined three situations in which failure to exhaust is excusable because an administrative remedy is not available to the inmate as required by the PLRA. Relevant here, a remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. Exhaustion is not required when "officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures. . . . [S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.* Nevertheless, an inmate faces a "high bar to show unavailability." *Williams v. Borrego*, No. 19-cv-00371-RBJ-MEH, 2020 WL 1502296, at *7 (D. Colo. Mar. 30, 2020).

In the Tenth Circuit, an inmate must make two showings in order to meet his "heightened burden" to show unavailability of administrative remedies. *See id.* (citing *May*, 929 F.3d at 1235; *Tuckel*, 660 F.3d at 1254). As the nonmoving party, Mr. Spotts "must produce specific facts that show there is a genuine issue of fact as to whether (1) 'the threat, machination, or intimidation actually did deter [him] from lodging a grievance' and (2) 'the threat, machination, or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance.'" *May*, 929 F.3d at 1235 (quoting *Tuckel*, 660 F.3d at 1254) (internal brackets and alternations omitted); *see also* [Doc. 42 at 7, 9 (relying upon the *Tuckel* framework in arguing that "it is Plaintiff's burden to prove that the administrative remedy process was unavailable to him")]. The first element is subjective, while the second, objective element "ensures that inmates cannot easily circumvent the exhaustion requirement, and provides district courts with a means of quickly filtering frivolous claims." *Tuckel*, 660 F.3d at 1254. Only conduct "sufficiently serious and . . . severe enough to deter a reasonable inmate will result in an administrative remedy becoming unavailable for PLRA purposes." *Id.* Because Mr. Spotts must demonstrate both elements to

satisfy his heightened burden, my analysis here begins and ends with the subjective element of the inquiry.[5]

In his Response, Mr. Spotts argues that the Administrative Remedy Program was unavailable to him on the grounds that, on March 15, 2021, he "asked A.W. Radrin [sic] and he directed me to Unit Manager Dubois[6] and she directed me to Case Manager Baca. That each of these three people stopped by cell . . . at my door, [and] no-one ever came around . . . to see me. So no administrative remedies were made available." [Doc. 54 at ¶ 3]. In addition, Mr. Spotts attaches an "Affidavit in Support" to his Response to Letter of Intent, which is signed and dated April 5, 2021, wherein he states

> [t]hat on 3/15/21, USP Florence Staff did it's Monday "walk around" in which I spoke with United Manager Dubois and Case Manager Baca and I asked for a[ ] grievance Form (i.e. BP 8, 9, 10, & 11). . . . [T]hey both asked me the date of my incident and I said from 11/1/20, thru 2/25/21, and they both told me that they could

---

[5] However, the court notes that Mr. Spotts also fails to provide any evidence that suggests that a reasonable inmate in the same or similar circumstances would be deterred from pursuing a grievance. *See Kilman v. Brown*, No. 21-1104, 2021 WL 4057687, at *4 (10th Cir. Sept. 7, 2021) (While Kilman makes several conclusory statements that 'officers denied multiple grievances multiple times,' he does not make the argument that any actions by the prison staff 'would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance.'" (citation omitted)); *see also Walker v. Mazotti*, No. 16-cv-02221-RBJ-MEH, 2018 WL 4385288, at *4 (D. Colo. Sept. 14, 2018) (applying the *Tuckel* test and finding that the plaintiff inmate failed to demonstrate either element).

[6] Plaintiff switches the spelling of Ms. Dubose's last name between "Dubose", "Dubois", and "Dubous". *Compare, e.g.*, [Doc. 47 at 1] *with* [Doc. 54 at ¶¶ 3–4]. As explained above, because Plaintiff appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). Consistent with this principle, at times, the court will quote from Plaintiff's filings without the use of [sic] or the correction of spelling or syntax. However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[The court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("The court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.") (internal citation omitted). Moreover, the court applies the same procedural rules and substantive law to Plaintiff as to a represented party. *See Murray,* 312 F.3d at 1199 n.2; *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

not give me any grievance forms because it has exceeded 20 days from the date the incident occurred.

[Doc. 47 at 5][7]; *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

In other words, the essence of Mr. Spotts's argument is that he made requests for Administrative Remedy Forms only on March 15, 2021; Mses. Dubose and Baca rejected Plaintiff's requests on the basis that more than twenty days had passed since Plaintiff's "incident" on February 25, 2021[8]; and, therefore, the BOP's administrative remedies were unavailable to him.

---

[7] Although Mr. Spotts filed a copy of his Response to Letter of Intent when he filed his Response to the Motion for Summary Judgment, *see* [Doc. 56], the earlier filed Response to Letter of Intent, [Doc. 47]—including Plaintiff's "Affidavit in Support" contained therein—is signed by Mr. Spotts, while the later filed Response to Letter of Intent is not signed by Mr. Spotts. *Compare* [Doc. 47 at 4–5] *with* [Doc. 56 at 4–5]. Therefore, the court will cite to the earlier filed Response to Letter of Intent in this Recommendation.

[8] In referencing only the responses of Ms. Dubose and Ms. Baca, the court relies upon Plaintiff's Affidavit, which he signed "under the penalty of perjury", wherein he states only that he "spoke with United Manager Dubois and Case Manager Baca and I asked for an grievance Form (i.e. BP 8, 9, 10, & 11)." *See* [Doc. 47 at 5]. Likewise, Plaintiff's Complaint alleges only that he was "impeded by . . . Ms. Dubose + Ms. Baca . . ." [Doc. 1 at 5]. However, the court notes that, in his Response, Mr. Spotts argues that he "need[s] the video footage to show that each of the defendant's who filed affidavits (*O'Donnell* , Dubous) and Baca, all came to Mr. Spotts Cell and never gave him a BP-8, 9, 10, or 11, when he spoke to them through the door requesting such and after he received that response he filed his Civil Action into Court." [Doc. 54 at ¶ 4 (emphasis added)]. And, as mentioned above, Mr. Spotts also asserts that on March 15, 2021, he requested Administrative Remedy forms from "*A.W. Radrin* [sic] and he directed me to Unit Manager Dubois and she directed me to Case Manager Baca." [*Id.* at ¶ 3 (emphasis added)]. However, Mr. Spotts' Affidavit does not mention that he spoke with either Defendant Rardin *or* Assistant Warden O'Donnell on March 15, 2021 to request Administrative Remedy forms. *Compare* [Doc. 47 at 5 ("[O]n 3/15/21, USP Florence Staff did it's Monday 'walk around' in which I spoke with United Manager Dubois and Case Manager Baca and I asked for a[ ] grievance Form (i.e. BP 8, 9, 10, & 11). . . . [T]hey both asked me the date of my incident . . .")] *with* [Doc. 54 at ¶¶ 3–4]. Thus, for the sake of clarity and consistency, and for the purposes of the instant Motion, the court will rely upon Plaintiff's signed Affidavit stating only that he spoke with Mses. Dubose and Baca on March 15, 2021. *See Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010) ("[W]hile . . . the *form* of evidence produced by a nonmoving party at summary judgment may not need to be admissible at trial, 'the *content or substance* of the evidence must be admissible.'" (emphasis in original) (quoting *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 485 (10th Cir. 1995)). Ultimately,

*See* [Doc. 47 at ¶ 1; *id.* at 5].  I find that Mr. Spotts has not satisfied his burden to create a genuine dispute of material fact that the Administrative Remedy Process was unavailable to him.[9]

At the outset, the court notes that there are nineteen days, not twenty, between February 25, 2021 and March 15, 2021 (including March 15).  *See* [Doc. 54 at ¶ 3 (Plaintiff's acknowledgment that March 15, 2021 was the "19th day" after February 25, 2021).  However, even assuming for the purposes of the instant Motion that Ms. Dubose and Ms. Baca both denied Mr. Spotts's requests for Administrative Remedy forms on March 15, 2021—based on the same erroneous conclusion that *more than* twenty days had elapsed—Plaintiff still fails to demonstrate that the Administrative Remedy process was unavailable to him.

Notably, Mr. Spotts does not explain how the denial of his requests for Administrative Remedy forms on a single day, March 15, 2021, prevented him from exhausting his administrative remedies altogether at any other time before he signed the Complaint just three days later, on March 18, 2021.  *See* [Doc. 1 at 7; Doc. 47; Doc. 54].[10]  Indeed, Mr. Spotts claims in his Response that "no [A]dministrative Remedy was available" between February 25, 2021, and March 12, 2021, but does not explain the circumstances that purportedly rendered the forms unavailable during that time.  *See* [Doc. 54 at ¶ 3]; *see also* [Doc. 47 at 5 (claiming he  was "returned back to 'General

---

as explained herein, whether Plaintiff spoke only with Mses. Dubose and Baca or other prison officials on March 15, 2021 makes no difference to the court's analysis.

[9] In their Reply, Defendants argue that Plaintiff's arguments—"that on one specific occasion on March 15, 2021, he requested an administrative grievance form, but was denied access to that form by 'Manager Dubois' and 'Case Manager Baca[ ]'"—constitute "bare allegations" that "are insufficient to meet Plaintiff's burden of demonstrating the unavailability of the administrative remedy process", for three reasons.  [Doc. 48 at 5].  However, the court need not pass on Defendants' arguments because it independently finds that Plaintiff has not met his burden to show that the Administrative Remedy Program was unavailable to him.

[10] Although the Complaint was docketed on March 22, 2021, Plaintiff signed it on March 18, 2021. *See* [Doc. 1 at 7]; *see also* [*id.* at 8 (indicating that the Complaint was placed in the mail on March 19, 2021)].

Population'" on March 12, 2021—three days *before* he Mses. Dubose and Baca purportedly denied his requests for the Administrative Remedy forms)]. Mr. Spotts also claims that the Administrative Remedy forms are "locked up in an office" and his "[c]ounselor was not around" when he needed to access the forms. [Doc. 47 at 3]. However, even assuming these assertions have merit, Mr. Spotts again fails to adduce any evidence to show that he could not obtain the forms, or communicate with his counselor regarding the forms, at any time before or after March 15, 2021.

Mr. Spotts has not alleged or demonstrated that he is properly excused from exhausting his administrative remedies. *See Tuckel,* 660 F.3d at 1254. Viewing the evidence in the record in a light most favorable to Mr. Spotts and drawing all reasonable inferences in his favor, *see Turner v. Public Service Co. of Colorado,* 563 F.3d 1136, 1142 (10th Cir. 2009), the court concludes that the record supports the affirmative defense that Mr. Spotts did not exhaust his available administrative remedies as required by the PLRA. And Mr. Spotts fails to meet his burden to establish that the Administrative Remedy Program was unavailable because "prison officials prevent[ed], thwart[ed], or hinder[ed]" his efforts to avail himself of the grievance process. *See Little*, 607 F.3d at 1250; *cf. Huffman v. Allred*, No. 11-cv-01459-CMA-KLM, 2013 WL 424779, at *6 (D. Colo. Jan. 10, 2013) (finding the plaintiff failed to show that administrative remedies were unavailable where the plaintiff alleged, *inter alia,* "he was often locked down and grievance forms were not readily available" and "the staff member who had the grievance forms had them locked in his office"), *report and recommendation adopted,* 2013 WL 425862 (D. Colo. Feb. 4, 2013). Accordingly, I find that Plaintiff's sole Eighth Amendment claim is barred. *See Boles v. Allen*, 784 Fed. App'x 596, 600 (10th Cir. 2019) ("Because the undisputed evidence in the record shows that Plaintiff did not follow the proper procedures to complete the administrative process, we affirm the district court's entry of summary judgment in favor of Defendants on Plaintiff's

[§1983] claim.").

## III.  **Plaintiff's Discovery Requests**

In his Response, Mr. Spotts also seeks discovery purportedly related to the exhaustion of his administrative remedies—specifically, video footage from November 1, 2020, through March 18, 2021, [Doc. 54 at ¶¶ 3, 7], and "all emails pertaining to him" between October 31, 2021, and November 1, 2021, [*id.* at ¶ 8].[11]  Mr. Spotts argues that he "need[s] the video footage to show that each of the defendant's who filed affidavits (*O'Donnell* ,  Dubous) and Baca, all came to Mr. Spotts Cell and never gave him a BP-8, 9, 10, or 11, when he spoke to them through the door requesting such and after he received that response he filed his Civil Action into Court."  [Doc. 54 at ¶ 4 (emphasis added)].[12]  Mr. Spotts also asserts that Defendants have refused to respond to his discovery requests.  [*Id.* at ¶ 13].  He requests that Defendants' Motion for Summary Judgment be denied and the "[d]iscovery requested within this [Response] and attached discovery motions be GRANTED as well and all discovery from 'FBOP Intranet and Video camara's be made available to Mr. Spotts 'immediately.'"  [*Id.* at 4].

Although Plaintiff does not mention Federal Rule of Civil Procedure 56(d), his argument that Defendants are not entitled to summary judgment because they failed to provide him essential information he requested is akin to an argument that the court should deny Defendants' Motion for Summary Judgment based on Rule 56(d).  *See Beshires v. U. of New Mexico Hosp.*, Civ. No.

---

[11] Mr. Spotts also filed the interrogatories and requests for production that he claims to have served Defendants.  *See* [Doc. 55; Doc. 57].

[12] As mentioned above, Mr. Spotts' Affidavit, [Doc. 47 at 5], does not mention that he spoke with either Assistant Warden O'Donnell on March 15, 2021 to request Administrative Remedy forms.  *Compare* [Doc. 47 at 5 ("[O]n 3/15/21, USP Florence Staff did it's Monday 'walk around' in which I spoke with United Manager Dubois and Case Manager Baca and I asked for a[ ] grievance Form (i.e. BP 8, 9, 10, & 11). . . . [T]hey both asked me the date of my incident . . .")] *with* [Doc. 54 at ¶ 4].

17-1111 JCH/SCY, 2019 WL 3081190, at *5 (D.N.M. July 15, 2019), *report and recommendation adopted,* 2020 WL 468042 (D.N.M. Jan. 29, 2020).[13]

Federal Rule of Civil Procedure 56(d) provides that the court may defer ruling on a motion for summary judgment and allow time to take additional discovery, if the non-moving party "shows by affidavit or declaration" that he "cannot present facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d).[14] "The declaration must specify '(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment.'" *Nat'l Union Fire Ins. Co. of Pittsburgh v. Dish Network, LLC*, 17 F.4th 22, 34 (10th Cir. 2021) (quoting *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015)). A plaintiff cannot defer a motion for summary judgment "simply [by] stating that discovery is incomplete." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010) (quoting *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1179 (10th Cir. 2008)). Rather, a party seeking relief under Rule 56(d) "must state with specificity how the additional material will rebut the summary judgment motion.'" *Id.* (quoting *Garcia*, 533 F.3d at 1179). Thus, "it is insufficient for the party opposing the motion to merely assert that additional discovery is required to demonstrate a factual dispute or that evidence supporting a party's allegation is in the opposing party's hands."

---

[13] Moreover, Plaintiff cites to *Ingle ex rel. Est. of Ingle v. Yelton*, 439 F.3d 191, 196 (4th Cir. 2006), for the proposition that "denial of Rule 56(f) motion is particularly inappropriate when the materials sought are the object of the discovery." [Doc. 54 at ¶ 5 (alterations and quotations omitted)]. Rule 56(f) became Rule 56(d) in December 2010, after the Fourth Circuit decided *Yelton. See F.D.I.C. v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013).

[14] Although this District's Local Rules of Civil Practice prohibit the inclusion of a motion within a response, *see* D.C.COLO.LCivR 7.1(d), Mr. Spotts titled his Response as a "Motion to Deny Summary Judgment" and, as a pro se litigation, his filings are subject to a liberal reading by the court. *See Allbaugh*, 921 F.3d at 1268. Accordingly, the court will consider Mr. Spotts' discovery-related arguments in this Recommendation.

*Gutierrez*, 841 F.3d at 908 (quoting *Lewis*, 903 F.2d at 754); *see Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1206 (10th Cir. 2015) (making clear that "Rule 56(d) motions [should] be robust," and observing that a supporting affidavit's "lack of specificity" counsels against granting relief under Rule 56(d)).

Mr. Spotts has not made a sufficient showing to avoid summary judgment through application of Rule 56(d).  Notably, Mr. Spotts fails to attach a declaration in support of his requests for discovery.[15]  That failure alone warrants the denial of relief under Rule 56(d).  *See Gutierrez*, 841 F.3d at 908.  Thus, to the extent Mr. Spotts is requesting that the court deny summary judgment based on Mr. Spotts's purported lack of discovery pursuant to Rule 56(d)(1), this court respectfully **DECLINES** to make such Recommendation.

Moreover, this court also **DENIES** any request to allow discovery on this issue given Mr. Spotts's failure to articulate, with any specificity, how the discovery sought could establish that he was excused for exhausting his administrative remedies.  Even if Mr. Spotts had included an appropriate declaration with his Response, he argues that discovery (i.e., "video footage") will show that, on March 15, 2021, Assistant Warden O'Donnell and Mses. Dubose and Baca refused Plaintiff's requests for the Administrative Remedy Forms.  *See* [Doc. 54 at ¶ 4].  Thus, notwithstanding the veracity of Mr. Spotts's allegations regarding who visited his cell that day, he would still need to explain, at a minimum, how the video footage *from that single day* will enable him to obtain the facts necessary to support this finding and rebut Defendants' affirmative defense that he failed to exhaust his administrative remedies.  *See Dish Network*, 17 F.4th at 34 (10th Cir. 2021) ("The declaration must specify '(1) the probable facts not available, . . . and (4) how

---

[15] Mr. Spotts' Affidavit, [Doc. 47 at 5], which was filed before his Response, [Doc. 54], makes no mention of discovery regarding his alleged attempts to exhaust his administrative remedies.

additional time will enable the party to obtain those facts and rebut the motion for summary judgment.'").   As explained above, Mr. Spotts has adduced insufficient evidence to carry his burden of demonstrating that he could not have filed the Administrative Remedy Forms at any time before or after March 15, 2021.[16]   *See, e.g.*, *Oldershaw v. DaVita Healthcare Partners, Inc.*, No. 17-cv-00131-MSK-MJW, 2018 WL 3648059, at *11 (D. Colo. Aug. 1, 2018) (denying a *pro se* plaintiff's request for relief under Rule 56(d), where the plaintiff merely argued in her response brief that the defendant "refused to turn over critical evidence relating to" various subjects, "warranting denial of [the motion for summary judgment] pursuant to Fed. R. Civ. P. 56(d)"); *cf. Campbell v. Singh*, No. 09-cv-01041-CMA-KLM, 2011 WL 4434945, at *3 (D. Colo. Sept. 23, 2011) (denying a plaintiff's request to defer summary judgment, where the plaintiff's supporting affidavit offered only "conclusory statements about incomplete discovery and broad allegations that Defendants destroyed his legal documents," failing to show "how the additional material or time w[ould] enable [the plaintiff] to rebut the summary judgment motion").

## CONCLUSION

For the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1)     Defendants' Motion for Summary Judgment [Doc. 42] be **GRANTED**; and

(2)     Summary judgment be **ENTERED** in favor of Defendants and **AGAINST** Plaintiff.[17]

---

[16] And, as mentioned, Mr. Spotts does not seek discovery for any other reason than to show that on March 15, 2021, "each of the defendant's [sic] who filed affidavits (O'Donnell , Dubous) and Baca, all came to Mr. Spotts Cell and never gave him the [Administrative Remedy Forms] when he spoke to them through the door requesting such and after he received that response he filed his Civil Action into Court."  *See* [Doc. 54 at ¶ 4].

[17] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection

**IT IS FURTHER ORDERED** that:

(1)     Any request to allow discovery, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, related to the exhaustion of administrative remedies is **DENIED**, for the reasons explained herein; and

(2)     A copy of this Recommendation shall be sent to:

> Kelvin Andre Spotts
> #05613-088
> MEMPHIS FEDERAL CORRECTIONAL INSTITUTION
> Inmate Mail/Parcels
> P.O. BOX 34550
> MEMPHIS, TN 38134

DATED:  April 22, 2022                                   BY THE COURT:

                                                        Nina Y. Wang
                                                        United States Magistrate Judge

---

for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 E. 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).